**Bernie LIEFF, Plaintiff–Appellant,**

v.

**MEDCO PROFESSIONAL SERVICES CORP., a Rotech Medical Corporation, and Al Brown, Individually, Defendants–Appellees.**

**No. 97CA1333.**

Colorado Court of Appeals,
Div. II.

July 9, 1998.

As Modified on Denial of Rehearing
Sept. 3, 1998.

Certiorari Denied April 12, 1999.*

---

* Justice KOURLIS would grant as to the following issue:

    Whether the court erroneously determined that a real estate license is required pursuant to section 12–61–101(2)(i), 4 C.R.S. (1998), as a condition to the right to be paid a consulting fee charged in

connection with the ownership change of the business that has an "at will" physical location where there is no real estate or lease transferred nor an agreement requiring transfer of real estate or a lease, and where the lessors are not identical.

Bucholtz & Bull, P.C., James C. Bull, Denver, Colorado, for Plaintiff–Appellant.

Pendleton, Friedburg, Wilson, F. Stephen Collins, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge NEY.

In this action to recover a commission under a contract for sale of a business, plaintiff, Bernie Lieff, appeals from the summary judgment entered in favor of defendants, Medco Professional Services Corp. (Medco), RoTech Medical Corporation (RoTech), and Al Brown, individually. We affirm.

In February 1995, plaintiff contracted to assist defendant Brown with the sale of all of the stock of his company, Medco, in exchange for a commission, $8,000 of which was to be paid up front to cover planning, research, and the preparation of marketing documentation. Under the contract, the remainder of the commission would be payable if plaintiff found a buyer for Medco.

While working on the project, plaintiff contacted RoTech about a possible purchase of Medco, and followed up with additional information at RoTech's request. At that time, the proposed sale did not progress.

In May of 1996, however, RoTech purchased Medco. Plaintiff was not informed of that transaction.

Subsequently, plaintiff sued for his commission and moved for summary judgment. Defendants opposed the motion and crossmoved for summary judgment on the grounds that the contract was void and unenforceable because plaintiff was not a licensed real estate broker, as required by §§ 12–61–101(2)(i) & 12–61–102, C.R.S.1997. In support of their motion, they cited *Barton v. Sittner*, 723 P.2d 153 (Colo.App.1986)(nonlicensed person acting within the statutory definition of "real estate broker" not entitled to contractual fee for services).

The trial court found that the licensure requirement applied and granted summary judgment for defendants. The dispositive issue presented is whether the sale involved an interest in real property so as to bring it within the scope of the *Sittner* holding.

At oral argument, plaintiff conceded that Medco at least had the status of a tenant at will of the premises, owned by Brown, where Medco conducted its business. *See generally* § 13–40–107(3), C.R.S.1997. Further, the contract corroborates that the parties were operating under the belief that a lease exist-

ed prior t o the sale. Moreover, plaintiff does not contend that this tenancy was terminated prior to the transfer of stock. Rather, it is undisputed that contemporaneously with the transfer, a long-term lease was substituted for Medco's tenancy at will. Thus, at the time of the closing, Medco possessed an interest in real estate consisting of, at the very least, a tenancy at will.

I.

Plaintiff, however, contends that §§ 12–61–101(2)(i) & 12–61–102 do not apply in this case since the leasehold itself was not transferred as part of the transaction. We disagree.

In *Cary v. Borden Co.*, 153 Colo. 344, 386 P.2d 585 (1963), our supreme court interpreted the predecessor to § 12–61–101(2)(i) to require a real estate license only where real estate was a dominant feature of the transaction. In 1965, in an apparent reaction to *Cary,* the General Assembly adopted the current language, *see* Colo. Sess. Laws 1965, ch. 238 at 934–936, which greatly expanded the circumstances under which a real estate license is required. *Broughall v. Black Forest Development Co.,* 196 Colo. 503, 593 P.2d 314 (1978). The new language was intended to:

> enlarge and extend the definition of real estate broker to include the full spectrum of activities related to the sale of real estate.

*Brakhage v. Georgetown Associates, Inc.,* 33 Colo.App. 385, 388, 523 P.2d 145, 146 (1974).

Pursuant to the change, with the exception of licensed securities brokers, § 12–61–101(2)(i) requires a real estate license for anyone:

> [n]egotiating or attempting or offering to negotiate the listing, sale, purchase, exchange, or lease of a business or business opportunity or the goodwill thereof or any interest therein when such act or transaction involves, directly or indirectly, any change in the ownership or interest in real estate, or in a leasehold interest or estate, or in a business or business opportunity which owns an interest in real estate or in a lease-hold....

This requirement has been held to apply to the sale of a business where an interest in real estate is transferred. *Broughall v. Black Forest Development Co., supra* (leasehold interest transferred with sale); *Brakhage v. Georgetown Associates, Inc., supra* (corporation's interest in real property transferred with the sale).

On appeal, plaintiff contends that the statute requires licensure only where the seller's leasehold interest is actually transferred as part of the transaction. Thus, plaintiff contends that both *Broughall* and *Brakhage* are distinguishable since, in both of those cases, an interest in real estate passed to the buyer as part of the transaction.

Accordingly, the question here becomes whether the licensure requirements apply under circumstances in which, at or immediately after the closing, seller's leasehold is terminated and buyer enters into a substitute lease. We conclude that there is no requirement that real estate or a leasehold be *transferred* from one legal entity to another to trigger the licensure requirements. Rather, where, as here, the corporation whose entire stock is sold holds a leasehold that becomes the buyer's leashold as a result of the sale, whether by transfer from the seller or otherwise, an indirect change in a leasehold interest, and therefore, the licensure requirements apply.

II.

Last, plaintiff contends that the court erred in ordering him to return the $8,000 fee paid up front pursuant to the contract. We disagree.

A counterclaim is the proper vehicle for a defendant to set forth a claim for relief. C.R.C.P. 8.

Here, rather than asserting a counterclaim, defendant Brown requested the return of the $8,000 in his motion for summary judgment. By failing to object to this procedural irregularity and responding on the merits, however, plaintiff waived any objection to this procedure. *Cox v. Pearl Investment Co.,* 168 Colo. 67, 450 P.2d 60 (1969).

Further, plaintiff was not surprised nor prejudiced by the procedure since he received notice of the claim and responded on the merits.

Judgment affirmed.

Judge CRISWELL and Judge BRIGGS concur.